**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 12-21815-CIV-SEITZ/SIMONTON

JEAN ROBERT-MARIO LAZARRE, JR.,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

**ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION,**
**DENYING PETITIONER'S HABEAS PETITION, AND**
**DENYING CERTIFICATE OF APPEALABILITY**

THIS MATTER is before the Court on the parties' Objections [DE 27, 28] to Magistrate

Judge Andrea Simonton's Report and Recommendation [DE 24]. Petitioner Lazarre's 28 U.S.C.

§ 2255 petition [DE 1] alleged two claims of ineffective assistance of counsel for failing to

challenge (1) an alleged speedy trial violation and (2) alleged prosecutorial vouching. The Court

has carefully reviewed *de novo* the record, the evidentiary hearing transcript [DE 31], Magistrate

Judge Simonton's thorough Report, both parties' Objections, and the Government's Response

[DE 29]. The Court finds that the Report's factual findings are amply supported by the record

evidence and the legal conclusions reflect a proper application of the law to the facts. As to the

speedy trial claim,[1] the Government could have done more to secure Petitioner while he was in

the Dominican Republic. Nevertheless, given that Petitioner was intentionally evading

prosecution, the balance of the factors ultimately weighs against Petitioner. Lazarre thus has not

shown either deficient performance or prejudice based on counsel's failure to move to dismiss on

speedy trial grounds. Therefore, the petition must be denied.

_____

[1] The prosecutorial vouching claim was not argued at the hearing. Neither party has objected to the
Report's finding that there was no improper bolstering or its recommendation to deny that claim.

1

## Background[2]

On October 9, 1998, Petitioner Lazarre was indicted for conspiracy to possess with intent to distribute cocaine, along with other money laundering offenses.[3]  Weeks before, in September, Petitioner left the United States for Haiti, not to return until his arrest in 2008.  He left behind his four-year-old daughter, his mother, and his sister, and he let his newly-purchased home fall into foreclosure, losing his over $35,000 down payment.  At trial in June 2009, he was convicted on all counts and received a 169-month sentence after a reduction for acceptance of responsibility.

According to Petitioner, counsel was ineffective for failing to move to dismiss on speedy trial grounds, because Lazarre claimed he did not know he had been indicted when he left in 1998 and the Government could have found him easily.  After balancing the speedy trial factors, Magistrate Judge Simonton concluded that no violation had occurred, and thus Petitioner had established neither deficient performance nor a reasonable probability that, had counsel filed such a motion to dismiss, it would have been granted.

## I.  Objections to Findings of Fact[4]

### A.  Petitioner's Objections

The Magistrate Judge found that Petitioner's decision to leave the United States in 1998 was primarily driven by his belief that he was likely to be "picked up."  She found his testimony that he left as part of a long-term plan to relocate for financial reasons to be not credible.[5]

---

[2] Docket entries from the underlying criminal case, No. 97-cr-687, are cited as [CR-DE __].

[3] Superseding indictments ultimately charged him with three counts: conspiracy to possess with intent to distribute five kilograms of cocaine, conspiracy to commit money laundering, and possession with intent to distribute five kilograms or more of cocaine.  [CR-DE 271.]

[4] Only the facts relevant to the parties' objections are discussed.  An in-depth recitation of the factual findings is set forth in the Report [DE 24].

[5] Three other witnesses testified at the hearing.  The Report found both government witnesses, former DEA Agent Robert Ayoob and Deputy U.S. Marshal William Repoli, to be truthful but found the testimony of Petitioner's sister Melissa Castro to be "somewhat implausible" to the extent she claimed she was not surprised by her brother's ten-year absence from the United States.  None of these credibility

Petitioner makes three objections to these findings.  First, he argues that there was "no evidence" that he knew of his "legal troubles," claiming that was "not his testimony." [DE 28, pp. 2, 8.]  However, this is a direct quote from his evidentiary hearing testimony.  Although he maintained the DEA agents who visited him in the Dominican prison in 2000 did not specify that he had been indicted, Petitioner conceded that they told him he had "legal troubles" awaiting him in the United States.  [DE 31 (Hr'g Tr. 119:9-16).]  Nevertheless, Petitioner asserts that he technically could not have known about his criminal charges because he left the country before he was officially indicted, and whether he could have "predicted or believed" that he might be prosecuted was "speculative." [DE 28, p. 2.]

Second, Petitioner objects to the finding that he was a fugitive.  In support of his adamant statement that there was "no evidence" of evasion [DE 28, p. 3], Petitioner contends that he did not act like a fugitive, because (1) he did not leave until a year after Paicely was arrested; (2) millions of people's homes fall into foreclosure for reasons unrelated to evading arrest; and (3) he travelled internationally and lived in Jamaica in his own name.  His view, unsubstantiated by any evidence of bad faith, is that the Government was intentionally concealing his charges and "play[ing] games with him."

Contrary to Petitioner's unsupported statements, it is clear that Petitioner both knew he was facing prosecution in the United States and fled to evade arrest, regardless of the date the indictment officially issued.  As the Report notes, Petitioner's explanation that he left the United States in 1998 for financial reasons as part of a long term plan to relocate is belied by the fact that he abandoned his recently-purchased Miami home in which he had invested $35,000 as a down payment and let it fall into foreclosure.  Petitioner travelled extensively for work in the music industry but remarkably never returned to the United States where his family and young

---

determinations have been challenged.

daughter with whom he claims to have had a close relationship live. He used his sister's Florida address rather than his own Jamaican address in his passport renewal application and went to a U.S. embassy in Jamaica only after his attempt to renew his passport remotely failed. Moreover, his co-defendant Keenan Paicely testified at trial that after he began cooperating with the Government between 1997 and 1998, he sent a message to Lazarre through Paicely's then-girlfriend Crystal Griffin to "save yourself" and flee. [CR-DE 1025, (Trial Tr. vol. 1, 135:23-136:8, June 15, 2009).] Petitioner testified that, by the time he left, he knew two of his co-defendants, including Paicely, had been arrested. [DE 31 (Hr'g Tr. 130:20-131:7).] Taking these facts together, the only logical inference is that Petitioner was a fugitive.

Finally, he objects to the finding that his testimony that he left only for financial reasons was not credible. This objection also lacks merit. Even ignoring all the evidence that he was intentionally evading arrest, Petitioner's testimony was riddled with inconsistencies. Most notable is the inconsistency with his acceptance of responsibility letter, in which he confessed that one of two reasons for his departure in 1998 was his fear of getting "picked up." When confronted with this admission during the evidentiary hearing, Lazarre conceded that it may have factored into his decision to leave the United States. [DE 31 (Hr'g Tr. 106:15-107:6).] He also has an undisputed history of lying to authorities, including during his arrest in this case. Thus, there was sufficient evidence to show that Petitioner's self-serving testimony as to his reasons for leaving were not credible. All of his factual objections are overruled.

### B. Government's Objections

The Magistrate Judge also found that the "uncontradicted testimony of Lazarre" was that he was driven to the border and released from the Dominican prison without explanation on May 1st or 2nd of 2003. The thrust of the Government's objections is that, because Petitioner's

4

testimony as to his reasons for leaving the United States was not credible, all factual findings based on his testimony should instead be found in the Government's favor. Specifically, it argues that the Court should find (1) that the DEA agents who visited Lazarre in the Dominican prison specifically told him he had been indicted, not just that he faced "legal troubles"; (2) that Lazarre escaped from jail in the Dominican Republic; and (3) that he did so in 2000 or 2001, not in 2003.[6] The Government's position is that Lazarre escaped by bribing prison officials.

While it is logical that the two DEA agents did not go all the way to the Dominican Republic just to visit Lazarre to tell him he had "legal troubles," the Government has presented no evidence to show that the DEA agents actually told him he had been indicted or that he bribed his way out of prison. Whether money changed hands or officials simply looked the other way as Lazarre was taken to the border, it is undisputed that he was released by unusual extrajudicial means. As to when he was released, the Government is correct that there was testimony at trial that he was out by 2001. Lazarre's ex-girlfriend testified that she and their daughter Charice visited him in Jamaica when Charice was seven, corresponding to 2000 or 2001. [CR-DE 1026, (Trial Tr. vol. 2, 58:25-59:8, June 16, 2009).] Pascal Garoute, a co-conspirator, also testified that he saw Lazarre in the Dominican Republic, at which time Lazarre divulged his concern that the United States might pick him up, and saw Lazarre again in Haiti in 2001. [CR-DE 1027, (Trial Tr. vol. 3, 58-59, June 17, 2009).] Although there is no reason to doubt this testimony, the Government's own reports [DE 9-12, 9-13] state that Lazarre was still in jail by May 2003. All of the Government's factual objections are overruled.

---

[6] The Government also objects without argument to the finding that it knew Lazarre's family owned property in Haiti. However, Ayoob testified that he knew Lazarre "had ties to Haiti" and had assumed his family owned property there. [DE 31 (Hr'g Tr. 149:11-14).] This evidence is sufficient to support the Magistrate Judge's finding.

## II.    Objections to Conclusions of Law

Based on these factual findings, the Magistrate Judge analyzed the four factors in the speedy trial test: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his speedy trial right; and (4) actual prejudice to defendant. *United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010).  On the first factor, the parties agree that the over ten-year delay between indictment and trial was presumptively prejudicial and weighed against the Government.  The parties objected only to the other three factors.  Each will be addressed in turn.

### A.  *The reason for the delay, attributable to both parties, should weigh slightly against the Government.*

As to the second factor, the Magistrate Judge concluded that both parties contributed to the delay but that it weighed slightly against the Government.  On the one hand, the Magistrate Judge found that the Government's evidence did not demonstrate that agents were as diligent as they should have been in securing Lazarre while they knew he was in jail in the Dominican Republic.  On the other hand, she found that the delay was largely due to Petitioner's intentionally evasive actions before and after his imprisonment in the Dominican Republic.

#### 1)  *Government's Objections*

The Government objects to the Magistrate Judge's findings that it should have done more to maintain custody of Petitioner while he was in the Dominican Republic and argues that this factor should have been weighed against Petitioner.  Its view is that Petitioner's evasion was the end-all-be-all of the analysis.  It also contests the Report's reliance on *Smith v. Hooey*, 393 U.S. 374, 377 (1969) and *United States v. Driver*, 462 F.2d 808, 810 n.1 (5th Cir. 1972) for the proposition that the Government cannot simply wait until a defendant completes his sentence in another jurisdiction before bringing him to trial.

Although *Smith* and *Driver* are factually distinguishable because those defendants were

located in domestic jurisdictions, the legal proposition for which the Report cites them applies equally to defendants in foreign countries. *United States v. McConahy*, 505 F.2d 770, 773 (7th Cir. 1974) ("There is no reason not to apply the rule of Smith v. Hooey when the defendant is incarcerated by a foreign government rather than the United States or one of its states."). The Government has the responsibility to show that it made reasonably diligent efforts to locate and bring Lazarre to trial even though he was located in a foreign country. *United States v. Heshelman*, 521 F. App'x 501, 507-09 (6th Cir. 2013) (collecting cases and rejecting the Government's "wait-and-see" approach with respect to a defendant known to be residing in Switzerland); *see also United States v. Resnik*, No. 92-00394-CR, 2014 WL 1463469, at *3 (S.D. Fla. Apr. 14, 2014) (collecting cases and noting that where a defendant is located in another country during the delay and extradition is not futile, "reasonable diligence is often established through extradition").

Based on the evidence presented at the evidentiary hearing, the Magistrate Judge correctly concluded that the Government failed to meet its burden. By July 2000, the Government learned that Petitioner was incarcerated under an alias in a Dominican prison but failed to seek a detainer or begin extradition proceedings before he disappeared again in 2003. The Government has provided no evidence that extradition from or seeking a detainer with the Dominican Republic would have been futile. In fact, its reports presupposed that extradition proceedings would be successful despite the Government's belief that it might have to wait until Lazarre completed his sentence. [*See* DE 9-11; DE 9-12.]

Moreover, there are other evidentiary gaps relating to the Government's search efforts. For example, former DEA Agent Ayoob could not recall speaking with Lazarre's sister after Lazarre left [DE 31 (Hr'g Tr. 146:1-3)], and she testified that the Government never contacted

her [DE 31 (Hr'g Tr. 23:22-24)]. Nor could Ayoob recall whether he flagged Lazarre's passport [DE 31 (Hr'g Tr. 147:15-148:5)], despite knowing of Lazarre's ties to Haiti.

### 2) *Petitioner's Objections*

Petitioner objects that his actions were irrelevant and great weight should be applied against the Government for its "unmatched" negligence doing the "bare minimum" to locate him. In general, the Government's burden to locate a defendant is significantly lower when that defendant is a fugitive. *See Heshelman*, 521 F. App'x at 506. Although, as mentioned above, there were shortcomings in the Government's investigation, Petitioner exaggerates them. As the Report enumerates, the Government exerted significant effort in trying to locate him–among other things, interviewing the mother of his child, conducting surveillance, running database searches, preparing reports on his whereabouts and updating them regularly, sending DEA agents to confirm Lazarre's identity after his arrest under an alias in the Dominican Republic, and ultimately locating and arresting him through a ruse during his second attempt to renew his passport. Finally, he splits hairs in an attempt to distinguish *Lamar*'s holding that the second factor was neutral in circumstances similar to this case, only because that delay was 42 months and the Government's investigation was more thorough and resulted in a longer, 80- to 90-page report. *United States v. Lamar*, 562 F. App'x 802 (11th Cir. 2014).

As between the evidence of the Government's investigation in this case and Petitioner's intentional international evasion of arrest, this Court agrees with the Magistrate Judge's finding that both sides were to blame. However, in this instance, the scale tips a featherweight against the Government for its actions in failing to seek a detainer or extradition in the over two years it knew Petitioner was in the Dominican Republic. Both parties' objections are overruled.

B. *Petitioner sat on his speedy trial right and this factor should weigh heavily against him.*

Given that Petitioner was aware he was facing criminal charges as early as 1998 and no later than 2000 when agents told him about his "legal troubles," the Magistrate Judge concluded that the third factor weighed heavily against him, because he waited to assert his speedy trial right until his arrest in 2008. Petitioner objects that he asserted his speedy trial right immediately after arrest, but the Government was granted a 120-day continuance to obtain documents from the Dominican Republic and locate material witnesses.

As discussed above, there was sufficient evidence of Petitioner's knowledge of his criminal charges by 1998. The difficulty in finding his co-conspirators by 2008 was a byproduct of Lazarre's own choice to sit on his speedy trial right for ten years in favor of trying to evade prosecution altogether. Thus, this objection is overruled.

C. *Because Petitioner was not entitled to a presumption of prejudice and cannot demonstrate actual prejudice, this factor weighs heavily against him.*

Finally, the Magistrate Judge found that the fourth factor weighed against Petitioner, because he was not entitled to a presumption of prejudice as a fugitive. She also found that he could not demonstrate actual prejudice from the delay based on the death of an impeachment defense witness and hypothetical plea offer.

Petitioner maintains he is entitled to a presumption and attempts to distinguish *Villarreal* because that defendant left after a "drug bust" whereas Petitioner remained in the United States for almost a year after Paicely's arrest. With respect to actual prejudice, he claims that Paicely's testimony about warning Lazarre to leave the country after Lazarre visited him in prison was the "only" evidence that Lazarre fled. He contends that Paicely's testimony would have been "impeached" by the fact that there was no way Lazarre, a suspected co-conspirator, would have been allowed to visit Paicely in prison.

9

As discussed above, there was sufficient evidence, beyond Paicely's testimony, that Petitioner was aware of his charges and fled to avoid prosecution. His "impossibility of a jail visit" theory is thus without merit and his objections are overruled.

### Petitioner is Not Entitled to a Second Evidentiary Hearing

Petitioner's request for a "*de novo* hearing of disputed issues" is denied. He already had a full opportunity to develop his claims in an evidentiary hearing before Magistrate Judge Simonton. *See Murray v. United States*, 145 F.3d 1249, 1254 (11th Cir. 1998) (once habeas petitioner has had the opportunity to be heard on his claims, he is not entitled to a second hearing). This Court read the official transcript of that proceeding and agrees with her credibility determinations as discussed above. *United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that a district court is not required to rehear testimony when accepting a magistrate's credibility determinations). Petitioner raises no new facts or evidence not heard at his initial evidentiary hearing. Although Petitioner criticizes the Government's failure to call Paicely and other unspecified government agents and implies that he did not have a "full" evidentiary hearing [DE 28, p. 5], if Petitioner believed absent witnesses had testimony relevant to his claims, he could have called them. His unsupported disagreement with the Report's findings is not a basis for a second evidentiary hearing. *See* 28 U.S.C. § 2255(b) (no hearing is warranted where the "files and records of the case conclusively show that the prisoner is entitled to no relief").

### No Certificate of Appealability Will Issue

In order to obtain a Certificate of Appealability, Petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is satisfied by demonstrating "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Jones v. Sec'y, Dep't of Corr.*, 607 F.3d 1346, 1349 (11th Cir. 2010) (quotation omitted).  Petitioner has not met this standard for either claim and a Certificate of Appealability must be denied.  Therefore, it is

ORDERED THAT

(1)     Magistrate Judge Simonton's Report [DE 24] is **AFFIRMED** and **ADOPTED.**

(2)     Respondent's Objections [DE 27] are **OVERRULED.**

(3)     Petitioner's Objections [DE 28] are **OVERRULED.**

(4)     Petitioner's request for a second evidentiary hearing is **DENIED.**

(5)     Petitioner's 28 U.S.C. § 2255 habeas petition [DE 1] is **DENIED.**

(6)     Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, a Certificate of Appealability is **DENIED.**

(7)     All pending motions not ruled upon are **DENIED AS MOOT.**

(8)     This **CASE IS CLOSED.**

DONE AND ORDERED in Miami, Florida, this __17__ day of September, 2015.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Hon. Andrea M. Simonton
     Counsel of Record